IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DANETTE WILLIAMS, on behalf of :
T.D.T., :
:
    Plaintiff, :
:
vs. :          CIVIL ACTION 09-782-KD-M
:
MICHAEL J. ASTRUE, :
Commission of Social Security, :
:
    Defendant. :

## REPORT AND RECOMMENDATION

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff[1]

seeks judicial review of an adverse social security ruling which

denied a claim for Supplemental Security Income for children

(hereinafter *SSI*).  The action was referred for report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Oral

argument was waived in this action (Doc. 24).  Upon

consideration of the administrative record and the memoranda of

the parties, it is recommended that the decision of the

Commissioner be affirmed, that this action be dismissed, and

that judgment be entered in favor of Defendant Michael J. Astrue

---

[1]This action was brought by Plaintiff's mother, though the Court
will refer to the child as the Plaintiff.

1

and against Plaintiff Danette Williams on behalf of T.D.T.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984).

At the time of the administrative hearing, Plaintiff was eight years old and had completed a second-grade education with special education courses in reading and math (Tr. 24). In claiming benefits, Williams alleges disability due to Attention Deficit Hyperactivity Disorder (hereinafter *ADHD*) and Disruptive Behavior Disorder (Doc. 18).

The Plaintiff filed an application for SSI on April 29, 2007 (Tr. 94-96). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Williams suffered from several severe impairments but was not disabled (Tr. 6-20). Plaintiff requested review of the hearing decision (Tr. 4) by the Appeals Council, but it was denied (Tr. 1-3).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Williams alleges that: (1) the ALJ erred in finding that Plaintiff did not meet or equal the requirements of Listing 112.11; and (2) the ALJ erred in finding that Plaintiff did not functionally equal the requirements of Listing 112.11 (Doc. 17). Defendant has responded to—and denies—these claims (Doc. 19). The evidence of record is as follows.

Medical notes from Dr. Karen L. Manning, dated September 12, 2000 through December 12, 2006, reveal general medical care for a child including strep throat, lower bowel obstruction, sinus congestion, fevers, and diarrhea (Tr. 207-53).

Records from Southern Choctaw Elementary School show that Plaintiff had eight disciplinary actions on campus or while being transported to campus by bus between August 10, 2006 and April 23, 2007 (Tr. 97-101). Several of the actions resulted in suspension from riding the bus and, in others, his prohibition from attending school until he returned with a parent.

Records from West Alabama Behavioral Medicine, dated December 14, 2006 through January 11, 2007, show that Williams underwent testing by Psychologist Richard Reynolds (Tr. 254-64). On the WISC-IV, Plaintiff "received a verbal score in the borderline range, a perceptual reasoning score in the low

average range, a working memory score in the low average range, processing speed in the low average range and a full scale IQ score in the borderline range;" on the WRAT-III, his scores were "mildly behind age level and grade level" (Tr. 255). Williams was diagnosed to have ADHD and Borderline Intellectual Functioning (Tr. 256).

Plaintiff saw Dr. Gregory Chad Green on May 8, 2007 for an eye exam, following which glasses were prescribed (Tr. 265-67).

School records show that an Individualized Education Program (hereinafter *IEP*) was completed on August 14, 2007 which stated that although Williams was in the first grade he had been receiving speech therapy for three years and that he was showing improvement (Tr. 126-31). The IEP stated that Williams did not have behavior problems which impeded learning by him or others (Tr. 127). School records indicate that in spite of difficulties with reading and mathematics, Plaintiff was promoted to the second grade (Tr. 153-54). An IEP for second grade was completed which indicated reading and mathematics problems; the reading deficiency affected Williams's other subjects (Tr. 188). It was also noted that Plaintiff's behavior affected his ability to learn (Tr. 189).

Records show that Plaintiff was admitted to Hillcrest Hospital March 11-17, 2008 after having been suspended from

school for inappropriate and disruptive behavior (Tr. 302-04).
He was discharged at his mother's insistence because of the
distance from home.  Williams's final diagnosis was depressive
disorder, not otherwise specified, with psychotic features and
impulse control disorder.

West Alabama Mental Health Center records note sessions
Plaintiff had with therapists between December 5, 2007 through
March 17, 2009 (Tr. 305-37).  There is evidence of the
adjustment of his medications and reports of his bad behavior.

A report dated February 4, 2009 from Psychologist Melissa
Jackson noted that Plaintiff was "not oppositional or resistant
at all during testing, even when the examiner was forced to push
him to remain focused" (Tr. 339; *see generally* Tr. 339-50).
Nevertheless, he was "quite inattentive, fidgety, hyperactive,
and impulsive throughout testing" (Tr. 340).  Though Williams
had difficulty reading the forms, he obtained a full scale IQ
score of 85, placing him in the low average range; his lower
subtest scores were those requiring reasoning ability.  Reading
and writing scores fell significantly below what was expected,
considering his IQ.  Testing placed Plaintiff at a borderline
intellectual functioning level, though it was Jackson's opinion
that his ability was, at least, within the low average range.
The Psychologist stressed that an accurate assessment of

Williams's intellectual abilities would require stabilization of his ADHD. Jackson noted that she did not have access to any of Plaintiff's school records for consideration in her evaluation (Tr. 340); she reported that Plaintiff's mother provided the supplemental historical information and, because of this, noted that caution should be taken in interpreting the results (Tr. 349). Jackson's diagnosis was ADHD, ruling out childhood onset bipolar disorder and learning disorder; she assigned Williams a GAF score of 35 (Tr. 343).

A school nurse, on May 21, 2009, wrote a letter which stated that she had known Plaintiff for two years (Tr. 205). She stated that he was easily agitated and acted out at those times, that he had been on medication since she had become acquainted with him, and that his behavior had only gotten worse. She noted that although his prescriptions had been changed several times, Williams was taking Welbutrin,[2] Risperdal,[3] and Metadate[4] at that time.

Plaintiff's second-grade teacher, in a letter dated June 3, 2009, stated that he had problems with staying focused,

[2] **Error! Main Document Only.**_Welbutrin_ is used for treatment of depression. _Physician's Desk Reference_ 1120-21 (52nd ed. 1998).
[3] **Error! Main Document Only.**_Risperdal_ is used "for the management of the manifestations of psychotic disorders." _Physician's Desk Reference_ 1310-13 (52nd ed. 1998).

comprehending skills, and controlling his behavior (Tr. 206). The teacher also noted that his medication did not seem to help.

At the evidentiary hearing before the ALJ, Plaintiff's mother testified that Plaintiff was in the third grade, that he had not failed any grades, and that he received special instruction in reading and math (Tr. 24). She testified that he was hyper and hit other kids (T. 25-26); he was sent to the school office regularly for fighting, hitting other kids, and cursing (Tr. 27). Though Plaintiff took medication, it did not seem to help; in fact, his behavior had gotten worse as shown by his use of knives and a BB gun (Tr. 28). He had also choked a girl at school (Tr. 29). The Mother stated that Williams could not focus or concentrate on tasks and that although she had sought help, she had not seen improvement (Tr. 32-35).

Doug McKeown testified as a mental health expert (hereinafter *ME*),[5] stating that he had reviewed the records and exhibits in the case file (Tr. 38-42). In testifying, McKeown reviewed those records, noting that IQ testing of Williams "indicated overall borderline intellectual function, but three of his four subscale areas were really above that level" (Tr.

---

[4]*Metadate* is a central nervous system stimulant used in the treatment of ADHD. **Error! Main Document Only.***Physician's Desk Reference* 3261-64 (62nd ed. 2008).
[5]Though the ALJ stated that McKeown's statement of qualifications appeared in the record (Tr. 39), the Court could not find such a

39).  He also noted that school records reported that Plaintiff

had average intellectual function and that Jackson's report

"indicated full scale intellectual function . . . in the low

average range, but the, the verbal comprehension abilities were

in the average range" (Tr. 40).  McKeown noted attention-related

difficulties and behavior problems as well as disruptive

behavior (Tr. 40-41).  McKeown went on to state the following:

> Overall, this is a youngster who does
> demonstrate some difficulties with attention
> and focus and also some acting out and by
> testimony today the, the worst of the acting
> out apparently is at home.  The, the issues
> would definitely need further and continued
> follow-up through mental health.  Most
> appropriately the, the issues would not meet
> or equal the Secretary's listing, in my
> opinion.  The, the domain criteria would
> indicate, based on the assessment, that
> there's really no limitations with regard to
> acquiring and, and using information.
> There, there is a less than marked
> difficulty with regard to attending and
> completing tasks and also a less than marked
> difficulty in interacting and relating with
> others.  Difficulties in moving about and
> manipulating objects, caring for himself and
> health and physical well-being are, are not
> demonstrated.

(Tr. 41).  McKeown expressed the opinion that Williams had been

experiencing this level of functioning since early 2007 (Tr.

41).

---

statement.

The ALJ summarized the evidence of record and made the
following determinations.  Plaintiff's mother's "statements
concerning the intensity, persistence and limiting effects of
[Williams's] symptoms were not fully credible" (Tr. 13).[6]  The
ALJ gave "some weight to the claimant's teachers and school
nurse responses," but noted that they were not medical opinions
and were not entitled to controlling weight (Tr. 13).  Some
weight was accorded to the opinions of Psychologist Jackson,
though the GAF score of 35 was given little weight (Tr. 15).
Great weight was given to the opinions of the ME (Tr. 15).

    The ALJ went on to find that Plaintiff had severe
impairments of ADHD and Disruptive Behavior Disorder, but that
he did not meet or functionally equal any of the Listing
requirements (Tr. 12).  In going through the domain analysis,
the ALJ found that Williams had less than marked limitation in
attending and completing tasks and in interacting and relating
with others; he found no limitation in any of the other four
domains (Tr. 15-20).

    Plaintiff first claims that the ALJ erred in finding that
he did not meet or equal the requirements of Listing 112.11
(Doc. 17, pp. 9-14).  Listing 112.11 concerns ADHD, the

---

    [6]The Court notes that this finding has not been challenged (Doc.
17).

requirements of which are as follows:

        Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.

        The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

        A.  Medically documented findings of all three of the following:

                1.  Marked inattention; and
                2.  Marked impulsiveness; and
                3.  Marked hyperactivity;

AND

        B.  For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.11 (2009).  The criteria of paragraph of B2 of Listing of 112.02 are:

        a.  Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

        b.  Marked impairment in age-appropriate social functioning, documented by history and medical findings (including

consideration of information from parents or
other individuals who have knowledge of the
child, when such information is needed and
available) and including, if necessary, the
results of appropriate standardized tests;
or
    c.  Marked impairment in age-
appropriate personal functioning, documented
by history and medical findings (including
consideration of information from parents or
other individuals who have knowledge of the
child, when such information is needed and
available) and including, if necessary,
appropriate standardized tests; or
    d.  Marked difficulties in maintaining
concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.02B2

(2010).

    In claiming that the ALJ erred in finding that he did not

meet the requirements of Listing 112.11, Plaintiff argues that

the ALJ reached the decision by making a number of errors.

Williams first asserts that the ALJ should not have relied on

the opinion of McKeown as he was a non-examining physician (Doc.

17, p. 11).  The Court notes that the opinion of a nonexamining

physician "is entitled to little weight and taken alone does not

constitute substantial evidence to support an administrative

decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir.

1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.

1985).  However, according to the Social Security regulations,

ALJ's "may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. § 404.1527(f)(2)(iii) (2010). The testimony of these medical experts is supposed to be evaluated the same as the other evidence of record. In this matter, McKeown is an ME and is not treated as a non-examining physician although he did not technically examine Plaintiff. Because the regulations specifically allow for an ME to testify at the ALJ's request, Plaintiff's assertion that his testimony should be disallowed has no merit.

Plaintiff goes on to assert that McKeown's testimony should be excluded because he failed to discuss "particular medical reports or school records in his testimony" (Doc. 17, p. 12). As noted earlier, McKeown began his testimony by summarizing the objective evidence as submitted by Psychologists Reynolds and Jackson as well as school records (*see* Tr. 39-40); McKeown did not specifically reference the authorship of the reports, but he discussed it. Williams's assertion that McKeown did not discuss it does not make it so.

Plaintiff has also asserted that the ALJ failed to indicate

the weight given to Psychologist Jackson's opinions (Doc. 17, p. 13).  More specifically, Williams stated that he "failed to credit the objective observations made during the testing" (*id.*).  Jackson had noted Plaintiff's specific behaviors during the testing, such as his being fidgety, inattentive, and impulsive.

The ALJ specifically stated that he had accorded "some weight to the opinion by Dr. Jackson regarding the claimant's diagnosis and treatment plan, however, [sic] I am not persuaded that the GAF score of 35 is an accurate reflection of the claimant's functioning ability based on the medical record as a whole, and therefore, give it little weight" (Tr. 15).  The ALJ cannot be expected to give a thumbs up or down on each comment put forward by an evaluator.  In this action, the ALJ specifically noted what he rejected in Jackson's determination. Williams's claim has no merit.

Plaintiff also asserts that the ALJ "completely ignored the testing performed in October 2006" by his kindergarten teacher (Doc. 17, p. 13).  The Court has reviewed the evidence cited (*see* Tr. 147-49) and notes that although the ALJ did not

specifically discuss it, the error is, at most, harmless.[7]  The
Court notes that this evidence is somewhat cumulative.  More to
the point, however, as acknowledged by Plaintiff, this evidence
cannot be given controlling weight as it is not medical evidence
(*see* Doc. 17, p. 14).  The ALJ summarized the balance of the
school records and found them "persuasive in describing the
claimant's overall learning ability as well as his behavior
problems" (Tr. 14).  The Court finds that the ALJ's failure to
discuss the evidence from the kindergarten teacher was harmless.

In his second claim, Williams asserts that the ALJ erred in
finding that Plaintiff did not functionally equal the
requirements of Listing 112.11 (Doc. 17, pp. 14-17).  In making
this claim, Plaintiff argues that he is markedly limited in
three of the six domains:  acquiring and using information,
attending and completing tasks, and interacting and relating to
others.  The Court will take these up separately.

The domain, *acquiring and using information*, "consider[s]
how well [a child] acquire[s] or learn[s] information, and how
well [a child] use[s] the information [the child has] learned."
20 C.F.R. § 416.926a(g).  School-age children (six-to-twelve
years old) "should be able to learn to read, write, and do math,

_____

[7]To summarize the evidence, the teacher opined that Williams was

14

and discuss history and science. [The child] will need to use these skills in academic situations to demonstrate what [he or she has] learned." 20 C.F.R. § 416.926a(g)(2)(iv). In the decision, the ALJ found no limitation in this domain, stating that the evidence demonstrated that Williams had "the ability to use the English language to communicate and understand simple sentences. Although he has experienced previous difficulty in speech, language, and math, the record indicates his improvement in this area as demonstrated by the claimant's advancing to the third grade" (Tr. 16).

Plaintiff has asserted that the ALJ "seemed to conclude that [Plaintiff] had no limitations in acquiring and using information because the earlier suggested diagnosis of mental retardation had been disproven by the IQ scores" (Doc. 17, p. 16). Williams noted that he had not mastered most of the academic areas in his first grade report card and had less than a kindergarten proficiency when he was in the second grade (*id.*).

The Court notes that Psychologist Reynolds, in January 2007, noted that Williams, after taking the WISC-IV, "received a verbal score in the borderline range, a perceptual reasoning

_____

inattentive, disorganized, disruptive, and performed his tasks poorly.

score in the low average range, a working memory score in the low average range, processing speed in the low average range, and a full scale IQ score in the borderline range" (Tr. 255). On the WRAT-III, Plaintiff's scores were "mildly behind age level and grade level," though lower than IQ scores would predict (Tr. 255). In testing with Psychologist Jackson, in February 2009, on the Universal Nonverbal Intelligence Test, Williams "obtained a Memory Quotient standard score of 95, which falls in the average range and occurs in less than 37 percent of children" his age (Tr. 347). Though other Quotient scores were lower, his Full Scale Score IQ score was "85, which occurs in less than 16 percent of children his age and is classified as low average" (Tr. 347). On the Woodcock-Johnson Tests of Achievement-III, all of his composite scores fell in the low average range, but his performance was "quite variable" (Tr. 347). The Psychologist noted twice that the scores were significantly lower than what would be expected for a child with Plaintiff's IQ.

The Court finds support for the ALJ's conclusion that Plaintiff did not have marked limitation in the acquiring and using information domain. While Williams can point to some evidence that demonstrates limitation, there is evidence which

shows otherwise.  In any event, Plaintiff has not demonstrated marked limitation.  The Court cannot say that the ALJ's conclusion is not supported by substantial evidence.

The domain, *attending and completing tasks*, considers "how well [a child is] able to focus and maintain [his or her] attention, and how well [the child] begin[s], carr[ies] through, and finish[es] activities, including the pace at which [the child] perform[s] activities and the ease with which [the child] change[s] them."  20 C.F.R. § 416.926a(h).  School-aged children should be able to focus their attention to follow directions, remember and organize school materials, and complete classroom and homework assignments.  They should be able to concentrate, not make careless mistakes, and change activities without distracting self or others.  20 C.F.R. § 416.926a(h)(2)(iv).  The ALJ found that Williams had less than marked limitation, noting that he "has some difficulty in this domain based on his hyperactivity and attention deficit" and "needs assistance in completing classroom and homework assignments" (Tr. 17).

Plaintiff's objection to this finding relies on a test given by his kindergarten teacher and the observations of

Psychologist[8] Jackson when she examined him (Doc. 17, p. 17).
The Court notes again, that the information provided by the
kindergarten teacher, placing Plaintiff at the sixth percentile
with regard to hyperactivity and inattentiveness is, at best,
persuasive—and not controlling—evidence.  With regard to
Jackson's observations, while the Psychologist noted
inattentiveness and hyperactivity, Plaintiff was able to
complete his tasks with redirection.  If Williams was as limited
as asserted, he would not have completed the testing.  Again,
while there is evidence that Plaintiff has hyperactivity and
attention problems, the evidence does not demonstrate that it
rises to the level of a marked limitation.  The Court cannot say
that the ALJ's conclusion is not supported by substantial
evidence.

Williams has also asserted that he is markedly limited in
the interacting and relating to others domain.  This domain
considers how well a child "initiate[s] and sustain[s] emotional
connections with others, develop[s] and use[s] the language of
[his or her] community, cooperate[s] with others, compl[ies]
with rules, respond[s] to criticism, and respect[s] and take[s]
care of the possessions of others."  20 C.F.R. § 926a(i).  For

_____

[8]Jackson is a Psychologist—not a Psychiatrist as referred to by

18

his age, Williams should be able to do the following: develop more lasting friendships with children his own age; begin to understand how to work in groups to create projects and solve problems; have an increasing ability to understand another's point of views and to tolerate differences; be able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 926a(i)(2)(iv).

In arguing this claim, Plaintiff points to the reports and conclusions of non-examining State Agency physicians (Doc. 17, p. 16)(*citing* Tr. 279). The Court notes, as Williams has previously argued, that the opinion of a nonexamining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle*, 914 F.2d at 226 n.3.

The Court acknowledges that there is more evidence in the record to support a finding of marked limitation in this domain, though noting that Psychologist Jackson specifically noted that Williams "was very compliant, friendly, pleasant to interact with, . . . [and] was not oppositional or resistant at all during testing even when the examiner was forced to push him to

_____

Williams (Doc. 17, p. 17).

remain focused" (Tr. 339). The Court also notes that first grade records stated that Plaintiff did not have a behavioral problem (Tr. 127). The Court finds substantial support for the ALJ's conclusion. In any event, Plaintiff must demonstrate marked limitation in two domains to be found to functionally equal the Listing requirements, *see* 20 C.F.R. § 926a(a), so Williams's claim that he has met this requirement is without merit.

Plaintiff has raised two different claims in bringing this action. Both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is recommended that the Secretary's decision be affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be dismissed, and that judgment be entered in favor of Defendant Michael J. Astrue and against Plaintiff Danette Williams on behalf of T.D.T.

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service

of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within fourteen days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     **<u>Transcript (applicable where proceedings tape recorded)</u>**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination

that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 24th day of September, 2010.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE